Matter of L.F.W. v J.R.W. (2005 NY Slip Op 52184(U))

[*1]

Matter of L.F.W. v J.R.W.

2005 NY Slip Op 52184(U) [10 Misc 3d 1067(A)]

Decided on December 21, 2005

Family Court, Nassau County

Lawrence, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 21, 2005

Family Court, Nassau County
In the Matter of L.F.W., Petitioner,
against
J.R.W., Respondent.
FXXX

Catherine Powell, Esq.
Attorney for Petitioner - L.F.W.
Martha S. Weisel, Esq.
Weisel & Weisel
Attorney for Respondent - J.R.W.

Richard S. Lawrence, J.
The captioned matter was referred to this Court by the Support Magistrate, to address the Mother's allegations of alienation of the children by the Father.
This Court posed the question to counsel, as to whether a hearing on alienation was necessary, in view of a prior hearing held by this Court. The Court set a briefing schedule for the parties. The Mother has timely filed her memorandum of law as the proponent that the question of alienation must be heard by this Court, at a hearing. The Father has submitted no opposition whatsoever. The genesis of the Mother's instant application is that after this Court's decision previously rendered, she must con-
tinue to make payment of the existing order of support; and she wishes to vacate that order upon the basis of alleged alienation of the children.
It is not clear as to whether the Mother alleges that alienation is a result of the Father's actions, or is a result of the actions of the child/children themselves. Paragraph 8 of the Mother's memorandum of law states that in this Court's decision upon the prior matter,
the Court only evaluated whether visitation would
be contrary to the children's best interests and
thus detrimental to their welfare....in determin-
ing what is in the children's best interests, the
Court did not undergo an analysis of the cause of
why visitation is detrimental to the children.
The Court never addressed whether the children
have alienated themselves from the mother.
The Mother continues in Paragraph 9 of her memorandum, that
the issue of alienation is still ripe for liti-
gation, the court has not yet addressed the issue
of fault and alienation in determining whether or
not the children should have visitation with the
Mother. The court only concluded that such visita-
tion would be contrary to the children's best
interests, but did not determine whether the nega-
[*2]
tive effect was caused by alienation.
The Mother cites two cases for the proposition that "where a child voluntarily abandons a non-custodial parent by refusing all contact and visitation, without cause, the parent's child support obligation may be terminated." First is Raiden v Raiden, 209 AD2d 396 (2d Dept 1994). That case does in fact stand for the propo-sition asserted by the Mother, but it did not find alienation in the circumstances, and denied the parent's application to vacate the child support order.
The second case cited by the Mother is Philip D. v Marietta E., 3 Misc 3d 1105A (Family Court of New York, Kings County 2004). That matter was brought by the father alleging that the mother had alienated the child's affections from the father. A hearing on visitation was commenced and the court found no alienation. In fact, just as in the matter at bar, the father sought suspension or termination of child support due to the alleged alienation. The trial court held that the father "blamed the mother, the court system and the various therapists who have attempted to help his son, [but] the Petitioner [father] has failed to take responsi-
bility for his own role in alienating his child." The Court went on to state that "the Petitioner has failed to show that the Respondent willfully and deliberately alienated the child from the Petitioner." The Court continued "the court's determination to suspend the non-custodial parent's visitation does not automatically relieve the non-custodial parent of his child support obligations. Only where a custodial parent is directly responsible for the interruption of the non-custodial parent's visitation will child support be suspended or terminated," citing Family Court Act §413 (emphasis supplied).
The Court continued "suspension of child support payments is warranted when the custodial parent's interference with visitation is to the level of deliberate frustration' or active inter-ference' with a non-custodial parent's rights.....If the conduct does not rise to the level of deliberate frustration or active interference, the court will not suspend child support payments."
The Court continued: "instances of deliberate and active interference must be extreme to warrant suspension of child support. Alexander v Alexander, 129 AD2d 882 (3d Dept 1987)." 
Just as in the case at bar, the Philip D. Court found that the custodial parent's conduct did not frustrate or interfere with the relationship. In fact, the Respondent there complied with all court ordered visitation in addition to placing the child in therapy," just as the Father did in the matter at bar. The Philip D. court concluded "the subject child cannot be forced to accept a relationship with his father. Further, the child's emotional resistance does not affect his right to receive support from the Petitioner."
In J.F. v L.F., 181 Misc 2d 722 (Family Court of New York, Westchester County 1999), the parties had joint custody but the mother had physical custody. The trial court found that the mother had alienated the children from their father to the extent that they no longer wished to have contact with him. The court ruled that the best interests of the children and their emotional needs mandated a change in custody to the father. To the same effect is Bobinski v Bobinski, 9 AD3d 441 (2d Dept 2004).
THE PRIOR MATTER BEFORE THIS COURT
Previously, this Court heard, at great length, four consolidated matters between these two [*3]parties. One of those matters was a petition brought by the Mother (Docket Nos. V-2349-97/03K and V-2350-97/03K), in which she requested a modification of the Court's order of visitation, claiming that the Father was alienating the children from her.
All four matters were the subject of extensive hearings before this Court, commencing September 10, 2004 and concluding on October 26, 2004. At the conclusion of testimony, counsel requested the right to file post-trial memoranda, and thereafter this Court issued its 52 page written decision on April 18, 2005. See In the Matter of J.R.W. v L.F.W., 7 Misc 3d 1015A (Family Court of New York, Nassau County, 2005).
Despite the Mother's assertion in her brief that the question of alienation was not addressed at the prior hearing (see Mother's memorandum of law, paragraphs 6 through 9), the fact is that it was addressed in this Court's decision dated April 18, 2005. (All page numbers refer to the applicable page of the decision of this court after the prior hearing.)
"Action No.3 is a petition brought by the Mother, also request-ing a modification of this Court's order of visitation in which she claims that the Father is alienating the children from her" (pages 3 and 4).
The Father's testimony was that he brought his own petition (also the subject at the same trial) because the children have been upset during visitation at both places and that sometimes the children refused to visit. "The Father states he encouraged' the children to go to visitation. At this point, the Father wants all visitation to end" (page 5).
"The Father brought the children to every single visit to Visitation Alternatives and he and the children have been in counseling and remain in counseling....Initially, he agreed to visitation but it was suspended on October 25, 2001, because the children did not want it'" (page 5 - 6).
"The Father stated that according to Dr. Favaro, visitation at his facility was suspended due to the Mother's inappropriate behavior;' after the third visit, Ann refused to go to any further visitation" (page 7).
"Visitation at Visitation Alternatives was held from August 2002 until January 2003 [when it was suspended by this Court], always on Tuesday, unless there was a doctor's appointment or the children were ill, in which case Visitation Alternatives held a make-up date for visitation" (page 9).
The testimony of the Mother's witness, Susan Silverstein, of Visitation Alternatives, was that "the visits at her facility were from September 27, 2002 until January 29, 2003 and were generally weekly. The children were very resistant to visiting with the Mother" (page 10).
Ms. Silverstein further stated "that the Mother came to her visit on November 27, 2002 inappropriately.' It was the opinion of the case supervisor that the Mother had been drinking. In addi-tion, Visitation Alternatives had cancelled that visit a few hours earlier, but the Mother appeared nevertheless. The Mother (and her father, who accompanied her) were spoken to by personnel at Visitation Alternatives to be sure that the Mother had not been drinking and to be sure she would get counseling for alcoholism. This was the first and only time that Visitation Alternatives saw the Mother in this condition, although they were aware of her history of alcohol abuse" (page 11).
"The Father has never purposefully been late for visitation but sometimes he meets rush hour traffic on his way home from work, which is something over which he has no control" (page [*4]14).
The Father's witnesses, consisting of a clinical social worker at the high school, a third grade teacher at the elementary school and a fourth grade teacher at the elementary school, testified that prior to each visitation and immediately subsequent to each visitation, each of the children had exhibited physical manifestations, and that "the Mother's alcoholism upset Brian greatly and he was frightened by a telephone call in 1999 from the Mother" (page 16). During the Mother's testimony, she admitted "that she has a criminal conviction in Domestic Violence Court for making a phone call' on March 21, 2002" (page 22). She continued that "on March 21, 2001 she was convicted in Domestic Violence Court and sentenced on August 22, 2001 to probation for three years. [This Court is aware that this witness previously testified that the incident was a year later]" (page 23).
"She stated that her lack of relationship with the children is not due whatsoever to her, and that it is all due solely to the Father's actions or words'" (pages 24 - 25). With respect to this testimony, see Philip D. v Marietta E., supra.
However, later in her testimony "the Mother further testified that she does accept some of the responsibility for the lack of relationship with the children" (page 25).
"At this point in the Mother's testimony a tape was authenti-cated by the Father. The message was from June 2, 2001 and the Father stated that he was one hundred per cent sure' it was the Mother's voice. During that telephone call to the Father's home, the person calling stated she was a social worker. The Mother denies that she made that call" (page 26).
This Court then questioned the children in camera at a Lincoln hearing (Lincoln v Lincoln, 24 NY2d 270 (1969)). This Court took extensive notes as to the children's testimony, but will not reveal it in this decision.
"The Law Guardian in her post-trial memorandum urges that this Court not allow any visitation whatsoever to the Mother....The Law Guardian further stresses that once visitation ceased, virtually all of the physical and psychological manifestations exhibited by the children also ceased" (pages 27 - 28).
The Court then, in its decision of April 18, 2005, reviewed the testimony and evidence under the heading "DISCUSSION AND ANALYSIS" (page 28).
"As set forth at the beginning of this decision and order, Action #3 is a petition brought by the Mother, requesting a modi-
fication of this Court's order of supervised visitation (the order dated August 29, 2002), claiming that the Father is alienating the children from her" (page 28).
With respect to the Mother's petition alleging alienation and upon review of all of the testimony and evidence before the Court at trial, the Court found that the Mother had not proven her case, and due to this failure of proof, Action #3 is dismissed" (page 30).
"Placed into evidence as Petitioner's exhibit III was a certain tape recording, which the Father alleges was a telephone call from the Mother to the children's home, in which the Mother represented herself to be a social worker. The Mother denies this call. The Court finds that the telephone call was in fact made by the Mother, in violation of court order, and that the Mother misrepresented herself, both to the children and to this Court, for her own selfish ends" (page 31).
"The Court further takes notice of the fact that the Mother was found guilty in criminal [*5]court to making a telephone call to the Father's home, in violation of an order of protection against her and in favor of the Father" (page 31) .
"Lastly, the Court notes the order of Judge Koenig dated
May 18, 2000 which, after a hearing, granted a three year order of protection against the Mother and in favor of the Father, which included a finding of aggravating circumstances" (page 31).
"The Court finds that, contrary to the Mother's assertions, the Father has not alienated the children; rather, it is the Mother herself, by her actions over the years, including one appearance at Visitation Alternatives when she was under the influence of alcohol, who has done so. Her guilty plea in criminal court, her telephone call to the home misrepresenting herself as a social worker, and the finding by Judge Koenig which resulted in a three year order of protection against her, all show to this Court that it is the Mother herself who has been responsible for the aliena-tion" (page 32).
"The Court is satisfied that the children's testimony to this Court was voluntary and there was no undue pressure from either parent regarding their testimony. The children each testified truthfully and forthrightly, in this Court's opinion" (page 32).
"The Court notes Court exhibit I, in which the parties agreed to therapeutic visitation at Visitation Alternatives, per order dated August 29, 2002. Clearly, the Father had no desire to suspend all visitation with the Mother" (page 43).
"In the matter at bar, the Mother has failed to prove that her therapy has afforded her the right to visitation. Furthermore, she initially testified that all of her lack of relationship with children is not due whatsoever to her, but only due solely to the Father. This Court finds otherwise" (page 47).
Therefore, despite the Mother's statement that the question of alienation was not addressed at the prior hearing, the fact is that the question of alienation was squarely before this Court; testi-mony was heard at great length regarding the question of alienation; and after trial this Court dismissed the Mother's claim of alienation, for a failure of proof. Under the doctrine of res judicata, the Mother cannot now attempt to raise the same issue and have it relitigated within a support context.
Accordingly, this Court finds that there was no alienation, either by the Father, or by the children themselves and that part of the Mother's petition alleging alienation is dismissed.
Since the balance of the Mother's petition was previously dismissed by the Support Magistrate, the support order continues as to her.
This constitutes the Findings, Decision and Order of the Court.
Dated: Westbury, New York
 December 21, 2005
[*6]